### In re JOHNSON.

(District Court, E. D. North Carolina. October 17, 1903.)

**1. MORTGAGES—DEBT SECURED—IMPLIED AGREEMENT.**

Where a mortgage executed by a bankrupt secured a part of the indebtedness evidenced by certain notes only, and not an open account, an agreement that the account should also be secured by the mortgage could not be implied in favor of subsequent creditors of the bankrupt.

**2. BANKRUPTCY—SECURED CLAIMS—APPLICATION OF PAYMENT.**

Where a bankrupt was indebted to a creditor on three notes secured by a mortgage and on an open account which was unsecured, and made payments without any instructions as to their application, the creditor was entitled to apply the payments on the unsecured indebtedness.

In Bankruptcy.

N. A. Sinclair, for bankrupt.

Jno. H. Cook, J. G. McCormick, and B. F. McLean, for creditors.

PURNELL, District Judge. The referee herein having filed his report, this cause was set down for hearing, and on September 17th was heard on the exceptions filed by creditors other than Pearsall & McNair, who file no exceptions; the exceptions being to conclusions of law, and not to findings of fact. The report of the referee as to findings of fact and conclusions numbered 1, 2, and 3, to which there were no exceptions, is affirmed. Exceptions are confined to conclusions numbered 4 and 5.

The fourth item in the report is thus stated, in substance, omitting details: The creditors contend that the rents received from the mortgaged property, $313, and which ought to have been received therefrom by the bankrupt; the proceeds of timber cut, $1,000, and tar obtained from the mortgaged land; and the amount received from insurance on a house burned located on the land, amounting to $1,586.47—"are by legal effect" payments upon the mortgage debt. The referee finds the $1,586.47 is the total amount of the said rents, timber, and insurance; that the proceeds of timber and rent of turpentine boxes on the Murphy land—$201.92—was paid to McNair & Pearsall, but the balance was not so paid, but was used in improving the mortgaged property, payment of insurance on the houses thereon, for taxes, and merchandise indebtedness generally. The three $1,000 notes bear no credits of money paid McNair & Pearsall, but the payments made to them are credited on the general account. The bankrupt never directed how the amounts paid should be credited. The referee held "that McNair & Pearsall had the privilege of applying all payments to the general merchandise account, if they elected to do so," and that the three $1,000 notes should not be credited by implication of law with the aforesaid $1,586.47.

The fifth finding is so closely allied to the foregoing that it may be considered as a part thereof, and is as follows:

"That the mortgage provides that the failure to pay either of the three $1,000 notes shall have the effect of immediately maturing the mortgage indebtedness, including the line of credit; that none of the three $1,000 notes have been paid or renewed; that on February 12, 1898, the merchandise indebtedness exceeded $800, and that at no time since that date was the said merchandise indebtedness less than $800. The undersigned ruled that, this clause in the mortgage gave to McNair & Pearsall the right to treat the whole indebtedness as due, but this right was one which McNair & Pearsall could exercise or not, at their pleasure." ·

On February 12, 1897, being in embarrassed circumstances, to settle an existing indebtedness and to establish a line of credit bankrupt executed a mortgage to McNair & Pearsall on six tracts of land to secure three notes of $1,000 each, payable one, two, and three years after date, and a line of credit, not to exceed three years, for $400, which might, at the option of McNair & Pearsall, be increased to $800. The provision of the mortgage is as follows:

"That whereas, said James H. Johnson, one of the parties of the first part, is justly indebted to the said McNair & Pearsall, in the sum of three thousand dollars, as evidenced by his notes of even date herewith, each in the sum of $1,000, payable, one, two, and three years after date respectively and all bearing interest from date at the rate of six per centum per annum: and whereas, the said McNair & Pearsall, by contract in writing, dated Feb. 4th, 1897, have agreed to sell to said James H. Johnson, goods, wares and merchandise of the kind kept by them to the amount of $400, and as the same are paid for by the said Johnson to sell him other goods, wares, and merchandise to said amount, that is to say, have agreed to give to said Johnson a line of credit to the amount of $400, which 'line of credit' the said McNair & Pearsall may at their option increase to an amount not at any time to exceed $800, the sale of such goods to be on a cash basis and to bear interest from dates of sales at six per cent. per annum and the total amount of such line of credit to be due and payable upon the first default in the payment of either of the notes above mentioned, or sooner upon the first failure of said Johnson to comply with the terms of his said contract of Feb. 4th, 1897, to which reference is hereby made."

It was further agreed that Johnson should have the buildings insured, and in case of loss the insurance should be paid to McNair & Pearsall, to be applied as far as it may extend to the satisfaction of the mortgage. The line of credit was not to extend beyond three years, unless otherwise agreed between the parties. Then follows the power of sale in case of default. The mortgage debt matured on the default of the mortgagor, to wit, 1900. From that time on we have a debt secured by the mortgage and an account without security, unless there was an agreement between the parties, as provided, varying the terms of the written contract. It is admitted there was no such written agreement, and no express agreement of any kind. Then the question arises, can an implied agreement vary the written agreement, or be considered as such an agreement as was contemplated in the written contract? The court feels no hesitancy in holding this question must be answered in the negative. An agreement to vary a written contract must be of equal dignity with the contract—in this case a written agreement under seal. This left a secured and an unsecured debt. The mortgage was recorded,

and never satisfied as provided for by the laws of the state. It was therefore notice to all of its existence, and no legal presumption can arise in favor of subsequent creditors of the mortgagor, as it appears those questioning the dealings between the mortgagor and mortgagee are. That a creditor has a right, in the absence of instructions to the contrary, to credit payments on an unsecured debt, and would naturally do so, rather than on a secured debt, is too well settled to be questioned. This is what the creditor did. Courts are very reluctant to disturb contracts and dealings between parties, especially at the instance of subsequent creditors, when both parties still adhere to these dealings, and there is no fraud upon the rights of third parties in a position to complain. The subsequent creditors are not in such position. They gave credit to the bankrupt without inspecting the records for liens on his property, assumed the risk, and must abide the consequences. The mortgage must be satisfied first, as decided by the referee. The questions pressed by these subsequent creditors are interesting, but they are not in a position to question dealings between the parties which occurred several years before they became creditors.

The referee is therefore affirmed.